**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

HEALTH AGENTS FOR AMERICA, an association,
2776 Sorrel Ave, Baton Rouge, LA 70805

*Plaintiff*,

vs.

ROBERT F. KENNEDY, JR., in his official capacity as Secretary of the United States Department of Health and Human Services, 200 Independence Ave. SW Washington, DC 20201;

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,
200 Independence Ave. SW Washington, DC 20201;

MEHMET OZ, in his official capacity as Administrator of the Centers for Medicare and Medicaid Services,
7500 Security Blvd. Baltimore, MD 21244;
and

CENTERS FOR MEDICARE & MEDICAID SERVICES,
7500 Security Blvd.
Baltimore, MD 21244,

*Defendants*.

Case No.______________

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF;**

**AND REQUEST FOR EXPEDITED CONSIDERATION**

Plaintiff Health Agents for America ("HAFA" or "Plaintiff") by and through its undersigned counsel hereby brings this lawsuit against Defendants Robert F. Kennedy, Jr., in his official capacity as Secretary of the U.S. Department of Health and Human Services; the U.S. Department of Health and Human Services; Mehmet Oz, in his official capacity as Administrator of the Centers for Medicare & Medicaid Services; and the Centers for Medicare & Medicaid Services, and allege the following:

## INTRODUCTION

1. This action challenges the interim final rule issued by the United States Department of Health and Human Services ("HHS"), identified as CMS-9872-IFC and published at 91 Fed. Reg. 60317 (Sept. 23, 2026) (promulgating 45 C.F.R. § 155.220(o)) ("the Rule"), and adopted by CMS to impose a temporary moratorium to pause the registration of agents and brokers that do not have Plan Year 2026 Exchange agreements with the Federally-facilitated Exchanges.

2. The Rule establishes a framework for temporary moratoria on certain agent and broker registrations with the Federally-facilitated Exchanges and immediately, without prior notice, imposed a moratorium affecting agents and brokers who did not have Plan Year 2026 Exchange agreements and seek to register for Plan Year 2027. *Id.* at 60320-22. The moratorium took effect September 23, 2026 and lasts until February 1, 2027, meaning any agent or broker who did not have a Plan Year 2026 Exchange agreement with CMS will not be given such an agreement for Plan Year 2027. CMS estimates that the current moratorium will sideline

approximately 19,000 "new"[1] agents and brokers from assisting consumers in purchasing health insurance coverage through the Federally-facilitated Exchanges.

3. The Rule threatens substantial operational and economic harm to HAFA members by restricting the ability of affected agencies to recruit, onboard, and deploy new agents and brokers during a critical enrollment period. The resulting personnel constraints will impair these agencies' capacity to respond to consumer inquiries, provide enrollment assistance, maintain service levels, replace departing personnel, and expand capacity to serve new clients.

4. The consequences extend beyond the businesses themselves. Consumers who rely on licensed agents and brokers for assistance understanding coverage options, navigating enrollment requirements, and maintaining appropriate health insurance coverage may experience delays, reduced access to assistance, or difficulty obtaining individualized service. The adverse impact the Rule will have on consumers and the overall stability of the ACA Marketplace cannot be understated inasmuch as seventy-six percent (76%) of all active plan selections made on Healthcare.gov for plan year 2026 were agent/broker assisted.[2]

5. HAFA is not the only association to ring the bell on CMS's overreach. The National Association of Insurance Commissioners ("NAIC") whose members are the primary regulators of health insurance carriers and insurance agents and brokers at the state level wrote a letter to Peter Nelson, Director, Center for Consumer Information and Insurance Oversight , CMS, dated October 14, 2026,

---

[1] For purposes of the Rule, a "new" agent is an agent or broker who did not have a Plan Year 2026 Exchange agreement with CMS. That is to say, the CMS definition of a "new" agent or broker does not take into account the number of years an agent or broker has been licensed to sell health insurance nor does it take into account whether the agent or broker held an exchange agreement for years prior to Plan Year 2026 open enrollment (*i.e.*, the Rule does not consider the years of experience that the agent or broker has selling on the Federally-facilitated Exchanges prior to the Plan Year 2026 but, rather, draws an arbitrary line at whether or not said agent or broker held a Plan Year 2026 agreement with CMS).

wherein the NAIC raises concerns over the adverse impact the moratorium will have on open enrollment for Plan Year 2027. *See* Exhibit A, *NAIC Letter to Director Nelson* (Oct. 14, 2026).

6. Moreover, the National Association of Benefits and Insurance Professionals ("NABIP") has filed a lawsuit with this court challenging the current moratorium and CMS-9872-IFC altogether. *See*, Exhibit B, United States District Court for the District of Maryland, Case 1:26-cv-04311-SAG (Oct. 15, 2026).

7. Plaintiff does not challenge CMS's legitimate interest in preventing fraud, unauthorized enrollment, misuse of personally identifiable information, or other misconduct. Indeed, Plaintiff sponsors a fraud prevention and reporting tool that its members use to report fraud and other misconduct to CMS through Plaintiff. Rather, Plaintiff challenges the legality of the means selected, the procedures employed, and the adequacy of the CMS's consideration of the consequences for compliant agents, agencies, and consumers.

8. Plaintiff alleges that Defendants acted contrary to law, exceeded their statutory authority, failed to satisfy applicable procedural requirements, and/or acted arbitrarily and capriciously, as established by the administrative record and the evidence submitted in this action.

9. Plaintiff seeks declaratory relief, preliminary and permanent injunctive relief, and, only to the extent legally available, a writ of mandamus requiring Defendants to perform any specific nondiscretionary duties established by law.

**JURISDICTION AND VENUE**

10. This Court has jurisdiction pursuant to 28 U.S.C. § 1331. Plaintiffs' challenge to

[2] See *Health Insurance Exchanges 2026 Open Enrollment Report*, https://www.cms.gov/files/document/health-insurance-exchanges-2026-open-enrollment-report.pdf (last visited Oct. 20, 2026).

the 2026 rule is reviewable under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*

11. Venue is proper in the United States District Court for the District of Maryland under 28 U.S.C. § 1391(e)(1)(A) because Defendant Centers for Medicare & Medicaid Services ("CMS") is headquartered in Maryland and conducts its official Agency functions there. The Administrator of CMS is sued in his or her official capacity in connection with the challenged agency action. Plaintiff also represents agents and brokers throughout the United States, including members in Maryland who are affected by the challenged Rule and registration moratorium.

12. This action seeks prospective declaratory and injunctive relief against federal agencies and officials for alleged violations of the Administrative Procedure Act. The challenged action concerns the federal Exchange registration framework administered by CMS, and venue is proper to the extent CMS, or the relevant federal official resides in this District within the meaning of § 1391(e)(1)(A).

## PARTIES

13. Plaintiff Health Agents for America ("HAFA") is a not-for-profit association organized under IRC 501(c)(6) for independent, non-captive health insurance brokers whose membership includes over 1,000 licensed health insurance brokers resident in Maryland and throughout the United States, who are duly authorized to sell, solicit, and service accident and health insurance products, including Qualified Health Plans certified for sale on the Federal Marketplace. Plaintiff HAFA's headquarters are located at 2776 Sorrel Ave, Baton Rouge, LA 70805.

14. Defendant Robert F. Kennedy, Jr., is sued in his official capacity as Secretary of HHS.

---

15. Defendant HHS is a federal Agency headquartered at 200 Independence Ave. SW, Washington, D.C. 20201.

16. Defendant Mehmet Oz is sued in his official capacity as Administrator of CMS.

17. Defendant CMS is a component of HHS and is headquartered at 7500 Security Boulevard, Baltimore, MD 21244.

## STATEMENT OF FACTS

### A. The Role of Agents, Brokers, and Agencies under the ACA

18. In order for an agent or broker to sell health insurance policies on a Federally-facilitated Exchange ( "FFE" or "Marketplace"), the agent or broker must enter into an agreement with CMS ("Exchange Agreement") for the plan year within which health insurance policies will be issued through an FFE.

19. Agents and brokers who held a Plan Year 2026 Exchange Agreement enrolled approximately seventy-six percent (76%) of all enrollments made through Healthcare.gov for that plan year.[3] This is an approximately forty-six percent (46%) increase in agent or broker assisted enrollments when compared to Plan Year 2023 enrollments. *Id*.

20. CMS's statistics highlight the important role agents and brokers play in enrolling and assisting consumers navigate the health insurance Marketplace. Indeed, CMS actively recruits agents and brokers to sell ACA policies on the promise that through the Marketplace an agent or broker can "help your [their] clients save money – and collect full commissions"; "get

---

[3] See *Health Insurance Exchanges 2026 Open Enrollment Report*, https://www.cms.gov/files/document/health-insurance-exchanges-2026-open-enrollment-report.pdf (last visited Oct. 20, 2026).

new clients"; "provide any level of service, collect the full commission"; and "handle everything online".[4]

21. Independent agents and brokers are the "boots on the ground" personnel who locate and service consumers who would otherwise be looked over and who, while eligible for health coverage through an FFE, would not be able to enroll in such coverage but for the assistance of the agent or broker. That is to say, that agents and brokers often interact directly and in-person with consumers despite CMS's comment that an agent or broker can "handle everything online". See Exhibit C, *Affidavit of Health Agents for America* (October 19, 2026).

22. Insurance agencies rely on qualified personnel to serve existing clients, respond to new inquiries, handle seasonal enrollment demand, and maintain continuity of service. *Id*. *See also*, Exhibit D, *Affidavit of HAFA Member Johnny Wallin* (October 19, 2026).

23. Consumers for whom English is their second language, whether a legal immigrant or a U.S.A. born citizen, are a group that often requires direct interaction and in-person assistance. *Id*. As such, insurance agencies must hire agents and brokers who are fluent in languages other than English. *Id*.

24. Recruiting and onboarding new agents is an important means of replacing personnel who leave, expanding consumer service capacity, and meeting increased demand during enrollment periods. *Id*.

25. Insurance agencies also incur costs associated with recruitment, licensing, training, compliance, supervision, technology, and staffing. Restrictions that delay entry into the relevant Exchange registration system can impair the value of those investments and disrupt planned staffing arrangements. *Id*.

## B. The Challenged Rule

[4] See, e.g., https://www.healthcare.gov/agents-and-brokers-register/ (last visited Oct. 20, 2026).

26. On September 23, 2026, HHS published CMS-9872-IFC at 91 Fed. Reg. 60317 *et seq*. The Rule adds 45 C.F.R. § 155.220(o), establishing a framework under which HHS may impose temporary moratoria on specified agent and broker registrations with the FFEs.

27. The Rule addresses agents and brokers who do not have a current Plan Year registration with the FFEs when a moratorium takes effect. It does not apply to registration of web-brokers under the framework described in the Rule and does not affect registrations on State-based Exchanges that do not use the Federal platform.

28. The IFR was made effective September 22, 2026, and was issued without prior notice and comment. Although the Agency invited comments after publication, it did not provide interested parties an opportunity to comment before the Rule and the accompanying moratorium took effect.

29. On September 23, 2026, CMS concurrently provided notice that, on behalf of HHS, and in accordance with 45 C.F.R. § 155.220(o) established under CMS-9872-IFC, the agency is immediately imposing a temporary moratorium to pause the registration of agents and brokers that do not have Plan Year 2026 Exchange agreements with the Federally-facilitated Exchanges and are seeking to enter into agreements with CMS to assist consumers with enrollment through the Federally-facilitated Exchanges for Plan Year 2027. The moratorium is scheduled to remain in effect until February 1, 2027, unless modified or terminated earlier.

30. The moratorium prevents affected agents and brokers from completing the registration process necessary to enter into the applicable Exchange agreements and assist consumers through the FFEs for Plan Year 2027.

31. The Rule thus establishes an immediate and consequential restriction on access to the FFE registration process, rather than merely announcing a nonbinding policy preference or an internal Agency procedure.

32. Notably, there is no exception in the Rule that would permit an agent who did not hold a Plan Year 2026 Exchange Agreement to contract with CMS for the 2027 Plan Year. Thus, for example, an agent who has held an Exchange Agreement for years prior to Plan Year 2026, but who did not contract with CMS for the 2026 Plan Year (*e.g.*, had a health issue in 2026, took a sabbatical in 2026, or for any number of reasons did not hold a 2026 Exchange Agreement) is precluded from selling ACA policies on the Marketplace for the Plan Year 2027 open enrollment period under the Rule. Like HAFA, the NAIC sees a significant issue in the absence of any exceptions to the moratorium issued under the Rule. *See* Exhibit A, *NAIC Letter to Director Nelson* (Oct. 14, 2026).

**C. HHS's Asserted Good-Cause Rationale**

33. HHS invokes concerns about an ongoing pattern of unauthorized enrollment, unauthorized plan switching, and other fraudulent or noncompliant conduct by a subset of agents and brokers. 91 Fed. Reg. 60317, 60321-22 (Sept. 23, 20226).

34. HHS cites, among other matters, CMS's cancellation on August 31, 2026, of approximately 315,000 Plan Year 2026 policies covering more than 760,000 individuals whose enrollments allegedly lacked verified citizenship or immigration documentation and for whom issuers were unable to identify claims or establish consumer contact. *Id*. at 60323.

35. HHS also states that CMS terminated Exchange agreements for hundreds of noncompliant agents and brokers beginning in January 2026 and that newly registered agents and

brokers were disproportionately represented among those subject to enforcement actions. *Id*. at 60325.

36. HHS contends that existing safeguards do not adequately address vulnerabilities associated with agent and broker access to federal Exchange systems, enrollment functions, and consumer information. It asserts that a temporary pause will allow CMS to implement enhanced identity-verification, authentication, monitoring, and other program-integrity controls. *Id*. at 60322.

37. HHS further relies on the approaching November 1, 2026, start of Plan Year 2027 Open Enrollment. It asserts that completing notice-and-comment rulemaking before implementing the moratorium would leave time for additional agents and brokers to register before the restriction became effective. *Id*.

38. Finally, HHS asserts that advance notice could encourage prospective registrants to accelerate their registrations before the moratorium took effect, thereby undermining the Agency's objective. *Id*. at 60325.

39. Plaintiff does not ask the Court to disregard legitimate efforts to prevent fraud, protect consumers, or maintain the integrity of federal Exchange systems. The question presented is whether HHS satisfied the specific procedural requirements Congress imposed before adopting the challenged rule.

### D. HHS Failed Adequately To Establish Good Cause For Dispensing With Prior Notice And Comment

40. HHS's stated objectives do not independently establish that notice and comment were impracticable, unnecessary, or contrary to the public interest.

41. The fact that HHS identified serious program-integrity concerns does not, without an adequate explanation connecting those concerns to the need to bypass ordinary rulemaking procedures, establish good cause under 5 U.S.C. § 553(b)(B).

42. HHS's reliance on the approaching Open Enrollment Period is insufficient unless the Agency demonstrates why the time available and the circumstances surrounding the Rule made notice and comment impracticable or contrary to the public interest, rather than merely inconvenient or less desirable than immediate implementation.

43. Plaintiff alleges that HHS failed adequately to explain why a shortened or expedited notice-and-comment process, coupled with existing enforcement authority and targeted interim measures, could not address the identified risks while permitting meaningful public participation.

44. HHS identifies existing enforcement mechanisms, including the authority to terminate Exchange agreements and suspend an individual agent's or broker's ability to transact information with the Exchanges under specified circumstances. The Agency's explanation does not adequately establish why those mechanisms, potentially combined with narrower measures, could not address the asserted concerns during an expedited rulemaking process.

45. HHS's assertion that advance notice might cause prospective registrants to accelerate their registrations is not, standing alone, sufficient to establish that notice and comment would defeat the public interest. The Agency must establish a reasoned connection between the asserted risk of advance registration and the necessity of dispensing with the procedures required by Congress.

46. The Agency's explanation must be evaluated in light of the actual scope of the moratorium, the categories of agents and brokers affected, the evidence supporting the asserted

urgency, the timing of the Agency's response to identified problems, and the availability of narrower alternatives.

47. To the extent HHS relied on information concerning misconduct that had been identified over a period of months, Plaintiff alleges that the Agency failed adequately to explain why those circumstances made prior notice and comment impracticable at the time the Rule was issued. The significance of that history must be evaluated on the administrative record, including the chronology of the Agency's knowledge and the emergence of any new information said to require immediate action.

48. Plaintiff further alleges that HHS did not adequately demonstrate why the Rule's breadth was necessary to address the identified risks, particularly where the Rule prevents otherwise eligible agents and brokers from completing registration without an individualized determination that they have engaged in misconduct.

49. The Agency's invitation to submit comments after the Rule took effect does not substitute for the advance opportunity to participate required by 5 U.S.C. § 553. Post-promulgation comments cannot, by themselves, cure an unlawful failure to comply with the APA.

50. HHS has known since at least 2018 that the Healthcare.gov platform is riddled with security risks that could have been readily fixed over the past eight (8) years. *See* GAO Report *Patient Protection and Affordable Care Act: Preliminary Results from Ongoing Review Suggest Fraud Risks in the Advance Premium Tax Credit Persist* (Dec. 5, 2025). As such, HHS must own its own culpability in the fraud and abuse occurring in the Marketplace and not be permitted to lay off its culpability on an arbitrarily selected group of agents and brokers.

51. For these reasons, and as further demonstrated by the administrative record, HHS's invocation of good cause was insufficient under 5 U.S.C. § 553(b)(B).

**E. The Immediate Effective Date Presents A Separate Procedural Issue**

52. The Rule was designated effective September 22, 2026, although it was published in the Federal Register on September 23, 2026.

53. Section 5 U.S.C. § 553(d) ordinarily requires 30 days between publication of a substantive rule and its effective date, subject to specified exceptions, including 5 U.S.C. § 553(d)(3).

54. HHS separately invoked good cause to waive the delayed-effective-date requirement. Plaintiff alleges that the Agency failed adequately to establish the circumstances necessary to invoke that exception.

55. Plaintiff requests review of the Agency's contemporaneous explanation for the immediate effective date and, to the extent necessary and supported by the administrative record, a determination that the Agency failed to comply with 5 U.S.C. § 553(d).

**F. Plaintiff's Injuries**

56. In anticipation for ACA plan year 2027 open enrollment, HAFA members have hired, trained and put on payroll new agents to assist with ACA applications and enrollments; however, CMS-9872-IFC has now prevented these agents from being able to assist consumers with their ACA coverage.

57. CMS-9872-IFC has resulted in new agents that HAFA members have hired, trained and put on payroll, and who are fully licensed and otherwise fully qualified to assist with ACA applications and enrollments, now being unable to assist with ACA applications and

enrollments for plan year 2027 open enrollment because they cannot enter into an Exchange Agreement with CMS.

58. CMS-9872-IFC will result in HAFA members needing to lay off new hires, who have already been invested in, who are licensed and otherwise fully qualified, and who were hired to assist ACA consumers, but who now cannot assist consumers with their ACA applications and enrollments as a result of CMS-9872-IFC.

59. CMS-9872-IFC will result in significant financial harm to HAFA members because it would eliminate the value of the investments that HAFA members have made in hiring, training, and adding to payroll new agents to assist with ACA plan year 2027 open enrollment.

60. CMS-9872-IFC restricts the available pool of qualified, licensed agents HAFA members may hire to assist their consumer clients and prospective consumer clients.

61. CMS-9872-IFC will disrupt HAFA Members' ability to assist their current consumer clients, let alone any new consumer clients, for ACA plan year 2027 open enrollment.

62. CMS-9872-IFC will disrupt HAFA Members' ability to assist their current and prospective consumer clients will result in significant harm due to increased client churn and the inability for HAFA Members to acquire and retain new clients because of agent staffing shortages, as well as irreparable harm to HAFA members' reputation and standing amongst their clients and the communities they serve.

63. CMS-9872-IFC disrupting HAFA members' ability to assist current and prospective consumer clients will result in consumers having less access to licensed, qualified agents who may assist them in navigating the complexities of applying for and enrolling in

Marketplace coverage, receiving the best Marketplace coverage available to them, or applying for and enrolling in marketplace coverage at all.

64. These injuries are directly attributable to the challenged Rule and moratorium and would be materially alleviated by an order preventing their implementation or enforcement pending compliance with the APA.

65. The injuries are particularly time-sensitive because the Plan Year 2027 Open Enrollment Period begins November 1, 2026. Once affected enrollment opportunities pass, Plaintiff may be unable to recover those opportunities through a later award of monetary relief.

66. Plaintiff does not rely solely on the existence of an APA violation to establish irreparable harm. Plaintiff will submit declarations and supporting evidence identifying the specific injuries that will occur before the Court can adjudicate the merits absent interim relief.

## CAUSES OF ACTION

67. Plaintiff realleges and incorporates by reference paragraphs 1-66 herein.

### COUNT I — Violation of the Administrative Procedure Act: Procedural Defects

68. Plaintiff realleges and incorporates by reference paragraphs 1-67 herein.

69. The APA requires agencies to comply with applicable procedural requirements when promulgating rules.

70. HHS issued the Rule without ordinary advance notice and comment, relying on a good-cause exception.

71. Plaintiff alleges that the exception was unavailable or inadequately justified because under the totality of the circumstances, HHS cannot demonstrate that following the

procedures set forth in 5 U.S.C. § 553(b) would be impracticable, unnecessary or contrary to the public interest. Plaintiff further alleges that, to the contrary, deviation from § 553(b)'s procedural protections is contrary to the public interest inasmuch as the immediate moratorium limits the number of agents and brokers who may assist consumers in obtaining health insurance coverage through an FFE. Plaintiff further alleges that imposition of the moratorium just weeks before the open enrollment period for Plan Year 2027 is and will continue to place an unnecessary burden and confusion to the already stressed FFE enrollment process.

72. To the extent the Rule was subject to a statutory delayed-effective-date requirement, Plaintiff also challenges the Agency's justification for dispensing with that requirement on the grounds stated above.

73. The challenged action should be held unlawful and set aside to the extent it violates applicable procedural requirements under 5 U.S.C. § 553.

**COUNT II — Violation of the APA: Arbitrary and Capricious Agency Action**

74. Plaintiff realleges and incorporates by reference paragraphs 1-73 herein.

75. Under 5 U.S.C. § 706(2)(A), a reviewing court shall set aside agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

76. Plaintiff alleges that Defendants failed adequately to consider material consequences for compliant agents, agencies, and consumers; failed adequately to explain material distinctions and assumptions; and failed adequately to consider relevant alternatives.

77. Plaintiff further alleges that the Agency did not reasonably explain why the chosen restrictions were appropriate in light of their foreseeable effects on registration access and consumer assistance.

78. Plaintiff alleges that these defects render the challenged action arbitrary and capricious and warrant relief under 5 U.S.C. § 706.

**COUNT III — Violation of the APA: Action in Excess of Statutory Authority**

79. Plaintiff incorporates paragraphs 1–78.

80. Agency action must remain within the authority delegated by Congress.

81. Plaintiff challenges the statutory basis and scope of the Rule, including the Agency's authority to impose the challenged registration moratorium and establish the associated regulatory framework.

82. Plaintiff alleges that the Rule exceeds statutory authority to the extent it cannot be reconciled with the governing provisions of the Affordable Care Act or other applicable statutory requirements.

83. Plaintiff requests review under 5 U.S.C. § 706(2)(C), subject to the statutory text, controlling precedent, and the administrative record.

**REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF**

84. Plaintiff incorporates paragraphs 1–83.

85. The challenged Rule threatens concrete and imminent harm to identified members, as specified herein.

86. Plaintiff alleges that the challenged action is unlawful for the reasons stated above and that ordinary retrospective relief may not adequately remedy the injuries incurred during the relevant enrollment period.

87. Plaintiff requests preliminary relief under Federal Rule of Civil Procedure 65 and permanent relief upon a final determination on the merits.

88. Plaintiff requests that any injunction be tailored to the violations found by the Court, the injuries established by the evidence, and the requirements governing equitable relief against federal agencies.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Declare that CMS-9872-IFC, or the challenged portions thereof, violate the Administrative Procedure Act or exceed statutory authority, to the extent established by the record and applicable law;

B. Set aside the unlawful Agency action, or the unlawful portions thereof, under 5 U.S.C. § 706;

C. Issue a temporary restraining order, upon satisfaction of Federal Rule of Civil Procedure 65, preventing enforcement of the challenged provisions to the extent necessary to preserve the Court's ability to grant effective relief;

D. Issue a preliminary injunction preventing enforcement of the challenged provisions against Plaintiff and its members within the scope permitted by law while this action is pending;

E. Upon final judgment, issue a permanent injunction against continued enforcement of any provisions determined to be unlawful, to the extent appropriate under governing equitable principles;

F. In the alternative, issue a writ of mandamus compelling performance of any specific nondiscretionary duty established by law;

G. Order expedited consideration and appropriate preservation and production of the administrative record;

H. Award costs and any attorneys' fees available under applicable law; and

I. Grant such other relief as the Court deems just and proper.

Dated: October 20, 2026

Respectfully submitted,

*/s/James R. Napoli. Esq.*
JAMES R. NAPOLI, ESQ. (BAR No 16766)
Diceros Law PLLC
1054 31st Street, Suite 300
Washington, DC 20007
Phone: (202) 705-3973
jrnapoli@diceros.law
*Counsel for Plaintiff*